United States District Court
Southern District of Texas
Galveston Division

| | | |
|---|---|---|
| **GalTex Pilots Service Corporation** | § | |
| | § | |
| *Plaintiff* | § | Civil Action No. 3:22-cv-45 |
| | § | |
| versus | § | Federal Question |
| | § | |
| | § | |
| **James Andrews,** *individually*; | § | |
| **John Mercadante, III,** *individually*; and, | § | |
| **OnWatchEnterprises, LLC** | § | |
| *Defendants* | § | |

### Plaintiffs' Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction

**To the honorable Judge of said Court:**

**Comes now,** GalTex Pilots Service Corporation ("GalTex" or "Plaintiff") who files this Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction against James Andrews ("Andrews"), John Mercadante III ("Mercadante"), and OnWatch Enterprises, LLC (hereinafter "OnWatch" or "Defendants") and would show the Court as follows:

### A. Parties

1. Plaintiff is a Texas corporation with its principal place of business at 1301 Pennzoil Road, Galveston Texas 77554.

2. Defendant James Andrews is a citizen of Texas and a managing member of OnWatch Enterprises, LLC. He may be served with process at his residence at 12706 Elena, Galveston Texas 77554.

3.     Defendant John Mercadante III is a citizen of Texas and a managing member of OnWatch Enterprises, LLC.  He may be served with process at his residence at 4307 Cannondale Lane Katy, Texas 77450.

4.     Defendant OnWatch Enterprises, LLC is a Texas domestic limited liability company with its registered principal place of business at 3 Greenway Plaza, Suite 1320, Houston, Texas, 77046.  Defendant OnWatch may be served through its Registered Agent for service of process, LegalCorp Solutions, LLC, 3 Greenway Plaza, Suite 130, Houston, Texas 77046.  Defendant OnWatch was formed on November 4, 2020.

## B. Jurisdiction and Venue

5.     This is a theft of trade secrets act case arising under the Defend Trade Secrets Act of 2015, 18 U.S.C. § 1836 and state law.  Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

6.     Venue is appropriate in this Court because all defendants reside, are located in, or transacted business and can be found in this judicial district and because a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(1)(2).

## B. Background

7.     In October of 2017, Plaintiff hired James Andrews to act as its Director of Operations.   As a condition of his employment, Andrews was required to sign a confidentiality agreement ("NDA") which contained a restriction on his use of GalTex's confidential information, trade secrets, and proprietary knowledge.

8.      Among other things, James Andrews was hired to help improve GalTex's technology and deployment of personnel.  At the time Andrews was hired, GalTex was using an older dispatch and vessel tracking system known as Harborlights.  GalTex wished to create its own privately-owned application to provide dispatch and billing services, and potentially develop it into a single solution for port users in Galveston County.

9.      During Andrews' employment at GalTex, he was provided access to, and helped GalTex develop, extensive confidential and trade secret information regarding the methodology GalTex uses to schedule and move ships within Galveston County ports. This includes, among other things, the exact times cruise ships loaded with thousands of passengers will embark or disembark and the precise timing of crude oil tanker movements, as well as how GalTex identifies, selects, and coordinates the movement and work of GalTex pilots.  GalTex pilots are licensed by the State of Texas and are the only individuals authorized by law to board and pilot foreign flagged vessels over 100 gross tons in the Galveston County ports.

10.     As part of this process, Mr. Andrews engaged a third-party company, Flashrock, LLC, to help GalTex design and create such an application using GalTex's knowledge and access to the proprietary knowledge of GalTex and its pilots.

10.     Flashrock's managing member is Defendant Mercadante.

11.     In October of 2019, Flashrock and Plaintiff entered into a Master Services Agreement ("MSA") which outlined the mutual obligations of Plaintiff and Flashrock.  A true and correct copy of the MSA is attached as Exhibit 1.

12. The MSA was initially prepared by Flashrock's counsel and negotiated by counsel for GalTex and James Andrews, as well as Mercadante, and it contained a provision regarding intellectual property:

> <u>Ownership of Work Product and Intellectual Property Rights</u>. Contractor acknowledges and agrees that all "Work Product" conceived, created, developed or reduced to practice in connection with the performance of the Services, and all copyrights, patents and other intellectual property rights therein, are and shall at all times be the property of Customer. All Work Product conceived, created or developed by Contractor prior to the execution of this Agreement and used in connection with the performance of the Services, including, but not limited to the Flashrock Platform, shall at all times remain the sole and exclusive property of Contractor ("Pre-Existing Software"). Contractor grants Customer a non-exclusive license to use the Pre-Existing Software, including the Flashrock Platform, solely for its business purposes. For purposes of this Agreement, "Work Product" shall mean all inventions, designs, creation, tools, processes, methods, technical developments, improvements, enhancements, ideas, concepts, discoveries, formulas, engines, programs, code and other work of authorship conceived, originated, made, developed, authored or reduced to practice by Contractor, alone or with others.

*See* Exhibit 1 at pg. 4, ¶ 7. This clause indicates that the software being developed, and the intellectual property used to create it was to be and remain the property of Plaintiff, GalTex Pilots Service, Corp.

13. Along with the MSA, an initial work order was issued that detailed the scope of work Flashrock would perform. A true and correct copy of the Flashrock Work Order is attached as Exhibit 2. The Work Order set a flat fee price for the procurement of the PilotOnWatch program as set forth below:

**FEES:**

| Delivery Services | Price (USD) Estimate | Payment Schedule | Estimated Project Delivery Date |
|---|---|---|---|
| Initial MVP Delivery | $250,000 | Billing – 20% Due on signing 20% after phase 2, 20% after phase 3 and 40% on deployment. | 5 – 6 months |
| Annual Subscription | Inc | 36 months of Silver Support from date of delivery. | |
| **Total Service Offering** | **$250,000** | USD – Net Value | |

Notes:
1. All pricing is quoted in US Dollars.
2. All terms and conditions are defined by the Master Services Agreement between FlashRock and Galtex to be executed on or before 9/15/2019. Work expected to begin within 15 days from signature.
3. Software Subscription Agreement for the FlashRock Platform will be between FlashRock and Galtex to be executed with delivery of product – starting the 36 months of Silver Support.
4. The subscription pricing includes periodic upgrades to the FlashRock Platform.
5. Galtex must have the Apple Enterprise Membership if App Store Deployment is required.

*See* Exh. 2.

14.    Flashrock did deliver an initial version of PilotOnWatch and subsequently had to modify it to work properly. These modifications required the use of GalTex employees, including Defendant Andrews, and the technical application of the confidential, proprietary and secret know how of the individual pilot members of GalTex. At present, PilotOnWatch is working as intended, but trouble is on the horizon.

**The Bloom is off the Rose.**

15.    It is undisputed that Mr. Andrews initially thrived in his role and made many great contributions to GalTex, but that changed in 2020 when he propositioned various members of GalTex[1] to support him in becoming a commissioned branch pilot. Mr. Andrews was advised that he was free to apply to become a pilot just like everyone else, but that he likely

---

[1] GalTex Pilots Service Corporation is the service corporation which provides transportation and dispatching services to the commissioned branch pilots for Galveston County. The board members of GalTex are the current commissioned branch pilots for Galveston County who are also known as the Galveston Texas City Pilots.

did not qualify given the rigorous seagoing experience required. This did not sit well with Mr. Andrews or the Pilots who were concerned he had loftier aspirations than what he was hired for.

16.     In August of 2020, Mr. Andrews apparently turned his sights to other opportunities, and, upon information and belief, began working with Defendant Mercadante towards developing a separate application platform modelled on PilotOnWatch, which they called "OnWatch".

17.     In November 2020, unbeknownst to GalTex, Defendants Mercadante and Andrews (while still employed by GalTex) formed Defendant OnWatch Enterprises, LLC.

18.     In September of 2021, during a GalTex board meeting, Andrews requested the support of GalTex for his and Mercadante's new company, OnWatch Enterprises. At that meeting, Defendant Andrews proposed a pilot tariff increase of $400.00 a vessel that would be set aside to fund OnWatch Enterprises and Andrews' salary. Mr. Andrews announced that if GalTex did not support OnWatch, he would resign. The proposal was rejected.

19.     Subsequently, Mr. Andrews withdrew his immediate resignation and agreed to stay on to help find his replacement and train that individual. His last date of employment was to be May 2022.

20.     Following the September 2021 GalTex meeting, various members of GalTex inquired where the NDA Mr. Andrews signed when he started work with GalTex was located. Andrews responded that they had all been "lost," but he agreed to sign a new one with retroactive effect as of the start of his employment. *See* November 15, 2021 email from James Andrews enclosing the NDA, Exhibit 3.

21. The pertinent language from Andrews' NDA is contained below:

> 2. **Confidentiality and Non-Disclosure**.
>
> a) **Definition.** "Confidential Information" means the proprietary information and trade secrets of the Company, including but not limited to, information about the Company's pricing, costs, financial information, and sales; relationships with shipping companies, cruise lines, and other customers; the Company's business development, marketing plans, and strategies; employee information, including compensation; Company shareholder information; and any other information that the Company deems confidential. Confidential Information does not include information that: (i) Employee can prove was in Employee's possession before the Company provided access to it; (ii) is in the public domain through no fault of or neglect by Employee; or (iii) that Employee learned from a third party not related to the Company, provided the third party obtained the information through legal, legitimate means.

*See* Exhibit 3, Andrews Confidentiality and Non-Disclosure Agreement. The Agreement also contained a Works Made for Hire provision which is contained below:

> 4. **Works Made For Hire.** Employee understands and acknowledges that any work that he or she creates or helps create at the request of the Company, including software, user manuals, training materials, sales materials, designs, presentations, and other written and visual works, are works made for hire in which the Company owns the copyright. Employee may not reproduce or publish these copyrighted works, except in the pursuit of Employee's duties with the Company.

22. In late 2021, Andrews informed GalTex that Flashrock was going to be dissolved, and if GalTex wished to continue support for PilotOnWatch, it would have to be through an agreement with Defendant OnWatchEnterprises, or GalTex could pay to purchase Pilot OnWatch (for which it had already paid in excess of $300,000) to be used on a third party platform.

23. Following this bombshell, GalTex met with Andrews and Mercadante a number of times in an effort to understand how to salvage the situation.

24. On February 2, 2022, a GalTex board meeting was held at which Defendant Mercadante announced to GalTex that GalTex did not own Pilot OnWatch, but they could have it for free if the Pilots agreed to support Mercadante and Andrews in developing

OnWatch, otherwise GalTex would have to pay five times the development cost GalTex had already paid. This ultimatum did not go over well with GalTex.

25. Andrews' resignation was accelerated on the following day, and during Andrews exit, a set of notes were discovered which contained a plan to undermine the members of GalTex to his benefit, by having him appointed as an in-house supervisor of the Galveston Texas City Pilots—with pay. These notes contained a series of disparaging and outrageous self-serving comments, which revealed that Andrews had been up to no good for quite some time, unbeknownst to his employer.

26. Undersigned sent Andrews and Mercadante cease and desist letters and discovery hold letters on the evening of February 2, 2022. *See* Cease and Desist Letter, Exhibit 4.

27. On the morning of February 3, 2022 Andrews sent a cryptic email to the Board of Pilot Commissioners and his replacement at GalTex asking that a self-executed "release" from his NDA be included in his personnel file. *See* February 3, 2022 Andrews Note, Exhibit 5. Interestingly, Andrews adopted a very different tone in his February 3, 2022 note rescinding his NDA than he did in his November 15, 2021 email to his employers. *Compare* Exh. 3 with Exh. 5.

28. Upon information and belief, Andrews is currently engaged in the possession, use, and dissemination of confidential information and trade secrets that are the property of GalTex, such as information about how GalTex identifies, selects, and coordinates the movement and work of GalTex pilots, the Pilot OnWatch source code, and he has actively sought out individual Pilot Commissioners for the Port of Galveston County to attempt to reveal private and protected information about shareholders of GalTex to the detriment of

GalTex, and for his and OnWatch Enterprises' benefit, for among other things attempting to have GalTex be forced to continue to pay Andrews to be the Pilot Board's monitor. The Galveston County Board of Pilot Commissioners has no such authority, yet during Andrews' termination interview, a set of notes were revealed which showed just these plans. These notes are attached to this complaint as a Sealed Exhibit.

29. Furthermore, while employed with GalTex, Andrews maintained a OneDrive online repository populated with Pilot Navigation Guidelines and confidential financial information. As of the morning of February 4, 2022, Andrews had cut off all GalTex access to the OneDrive folder which contained GalTex's confidential information.

30. On February 4, 2022, Plaintiffs sent a formal notice of termination to Andrews with a request that he turn over all passwords to any cloud-based storage, all financial data, and all physical property that belongs to GalTex. During Andrews' exit, he refused to turn over his cell phone even though it is paid for by Plaintiff. Andrews was advised not to alter, delete or otherwise modify the contents of his cell phone or any other devices containing data related to Galtex.

31. Additionally, upon information and belief, OnWatch Enterprises is currently marketing their services using the very product that Flashrock was hired to develop. According to a quote located on OnWatch's website, "We started by thinking it should be as easy to order a pilot as it is to order a pizza. We designed PilotOnWatch to facilitate digital ordering, dispatching, and invoicing of harbor pilots, making that service provider more nimble." *See* [www.onwatchus.com](www.onwatchus.com) last visited on February 3, 2022, a true and correct copy of the OnWatch Enterprises, LLC website home page is attached as Exhibit

9

6. In other words, OnWatch is marketing the PilotOnWatch system designed for GalTex as its product in contravention of Andrew's NDA and the Flashrock MSA.

32. Information about the movement, assignment, and management of licensed branch pilots is treated by GalTex as sensitive security information ("SSI") under federal and state law[2], for the reasons more fully set forth in the Opinion from then Attorney General of Texas, Greg Abbott, dated October 19, 2007 attached hereto as Exhibit 7.  SSI related to branch pilots is sensitive because it could be misused to compromise the safety and security of vessel movement and the safe, secure operation of the ports.

33. Andrews had access to SSI in the course and scope of his job, and the substance of some of that SSI information was incorporated into GalTex's proprietary Pilot OnWatch system.  As such, Andrews' continued unauthorized possession, use, and/or disclosure of such SSI information, alone or in tandem with Mercadante and/or OnWatch Enterprises, is inconsistent with state and/or federal law and poses a serious port security risk.

## V.
## CAUSES OF ACTION

**Count 1:**     **Breach of Non-Disclosure Agreement (Andrews)**

34.   GalTex incorporates the preceding allegations by reference as if fully set forth in this section.

35.    In connection with Andrews' work with GalTex, Andrews executed a valid and enforceable confidentiality and non-disclosure agreement.

---

[2] *See generally,* 49 C.F.R. § 1520.5, defining "sensitive security information."

36. GalTex has fully performed its obligations under such agreement. All conditions precedent have occurred, or have been performed, or have been waived.

37. After signing the confidentiality and non-disclosure agreement, and throughout Andrews' engagement with GalTex, GalTex gave Andrews access to and tasked him with compiling a significant amount of proprietary and other confidential information to which he did not would not otherwise have had access. Andrews was also privy to confidential health and private information regarding the individual Pilot Members. The confidential and proprietary information that Andrews received from GalTex is very important to GalTex's business success and port security.

38. GalTex has invested significant time and money developing the confidential and proprietary information learned and used by Andrews in connection with his work with GalTex, which includes, but is not limited to, the development of PilotOnWatch, source code for the PilotOnWatch software, the confidential information regarding the internal management and operation of the Pilots, the methodology used by GalTex in preparing rate requests, individual pilot compensation, private health and personal information regarding pilots, among other documents and information.

39. Andrews materially breached the confidentiality and non-disclosure agreement by keeping, using, and disclosing GalTex's confidential and proprietary information for his own benefit and diverting it for the benefit of himself and third parties such as OnWatchEnterprises and Mercadante without the express authorization of GalTex. Andrews also materially breached the Agreement by failing to return to GalTex all

confidential information in his possession when his working relationship with GalTex ended.

40. Andrews' breach of contract has and will continue to cause GalTex to suffer economic damages and other real harm.

41. GalTex seeks to recover its attorneys' fees, costs, and expenses incurred as a result of Andrews' breach of his obligations under the confidentiality and non-disclosure agreement.

**Count 2:     Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act**

42. GalTex incorporates the preceding allegations by reference as if fully set forth in this section.

43. While working for GalTex as Director of Operations, Andrews was entrusted with GalTex's confidential information, trade secrets, and proprietary information strictly for use on behalf of GalTex. The information and documents that Andrews wrongfully obtained, used, disclosed, or misappropriated is confidential information that (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy (including, but not limited to, password protection for its various computer systems, use of appropriate agreements and policies, and limiting access to GalTex's place of business and online data folders including a OneDrive folder with confidential financial information).

12

44. Andrews is a former Director of Operations for GalTex who was granted access to GalTex's most confidential information and trade secrets and who promised not to disclose such information other than as permitted by GalTex to accomplish his job duties. Andrews wrongfully obtained, disclosed, or used GalTex's trade secrets without GalTex's express or implied consent, and upon information and belief has destroyed or prevented access by GalTex to its own online data.

45. As a direct result of these wrongful acts, Andrews and those with whom he now conspires and collaborates have been unjustly enriched and have caused GalTex to suffer economic damages, including loss of trade secrets, loss of proprietary and confidential information, and lost profits.

46. In undertaking these actions, Andrews acted willfully and maliciously. GalTex is therefore entitled to recover its attorneys' fees in addition to economic damages.

**Count 3:** **Breach of Duty of Loyalty/Fiduciary Duty**

47. GalTex incorporates the preceding allegations by reference as if fully set forth in this section.

48. As a former executive-level employee of GalTex, Andrews owed GalTex a duty during his employment to act in GalTex's best interest. Andrews also owed GalTex a duty while he was employed by GalTex and after his employment terminated not to divulge or take away GalTex's confidential information and trade secrets.

49. Andrews breached such duties by using his position and knowledge of GalTex's most sensitive proprietary and confidential information and trade secrets to further his own

interests in connection with founding and developing a business designed to deprive GalTex of the beneficial use of the Pilot OnWatch software, and by disclosing GalTex's trade secrets and other confidential and proprietary information to third parties without GalTex's authorization.

50. As shown in Andrews' self-executed release from his NDA, he has no intention of honoring the confidential nature of GalTex's work product, and he intends to profit from it. *See* Exh. 5.

51. GalTex seeks to recover its economic damages and disgorgement of all proceeds and profits resulting from Andrews' breach of his fiduciary duties.

52. Due to the willful and malicious nature of Andrews's conduct, GalTex also asks for an award of punitive damages.

**Count 4:    Civil Conspiracy**

53. GalTex incorporates the preceding allegations by reference as if fully set forth in this section.

54. Upon information and belief, Mercadante and Andrews worked in concert to create OnWatch Enterprises to deprive Plaintiff of its intellectual work product (PilotOnWatch) in an effort to force Plaintiff, by holding PilotOnWatch hostage, to freely supply its intellectual property: namely the data gathered by PilotOnWatch that was to be fed into OnWatch.

55. Mercadante's and Andrews' intention was to harm GalTex, and they utilized Andrews' misappropriation of GalTex's confidential information and trade secrets for their mutual benefit under the guise of OnWatch Enterprises, LLC.

**Count 6:      Application for Temporary Restraining Order and Temporary Injunction**

56.     Pursuant to 18 U.S.C. § 1836(b)(3) of the Defend Trade Secrets Act, the Texas Defend Trade Secrets Act, Texas Civil Practice & Remedies Code § 134A.003, and Federal Rule of Civil Procedure 65, GalTex requests a Preliminary Injunction and Restraining Order issue against the Defendants.

57.     For the harm and loss suffered by, and for the harm that will continue into the future but for the intervention of the Court, GalTex has no adequate remedy at law.  Accordingly, GalTex is entitled to injunctive relief against Defendant.

58.     To warrant injunctive relief, a plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

59.     The self-executed "release" of NDA attached as Exhibit 5 illustrates that Defendant Andrews has no intention of honoring his contractual obligations as an employee of GalTex. Furthermore, Defendant Andrews has used his confidential knowledge of the members and owners of GalTex in an attempt to cause harm to them and GalTex. Defendants Andrew should be enjoined from using, disclosing, or transferring the confidential information and trade secrets to which he was privy to as an employee of GalTex, and Mercadante and OnWatch Enterprises should be enjoined from using any of

GalTex's confidential information and trade secrets they have come to know or possess, until the Court has held a hearing on this matter.

60. Defendants' unauthorized use of legally protected SSI information related to the management and deployment of branch pilots and port operations poses a security risk to the movement of vessels and port operations in Galveston County.

61. Furthermore, Andrews' actions in taking dominion over GalTex's OneDrive folder containing confidential information also demonstrates the urgency of this motion and need for an order restraining Andrews from further destruction or dissemination of Plaintiff's confidential and trade secret information.

62. There is a substantial likelihood that Plaintiff's will prevail on the merits of their underlying claims.

63. The threatened harm to Plaintiff outweighs the harm a temporary restraining order would inflict on the Defendants.

64. Plaintiff is willing to post a bond in the amount the Court deems appropriate. Plaintiff urges that Court provide for a minimal cash bond to be posted with the Court.

65. The Court should enter a temporary restraining order restraining Defendant because Plaintiff will suffer immediate and irreparable injury, loss, or damage if the temporary restraining order is not granted before the Defendant can be heard, and there is no less drastic means to protect Plaintiff's interest.

66. Plaintiff also request the Court to enter a temporary injunction consistent with the foregoing and set a preliminary injunction hearing within 14 days.

## VII.
## PRAYER FOR RELIEF

67. Pursuant to the Defend Trade Secrets Act, the Texas Uniform Trade Secrets Act, Federal Rule 65, and general principles of equity, GalTex requests temporary and permanent injunctive relief to restrain acts prejudicial to GalTex, irrespective of any remedy at law.

68. GalTex requests that the application for injunctive relief be set for hearing and that Defendant be notified of the date, time and place of the hearing and, upon such hearing, the Court issue a temporary injunction against Defendant Andrews enjoining him as described above.

69. GalTex additionally seeks expedited discovery under Federal Rule of Civil Procedure 26(d) in order to conduct discovery prior to the initial injunction hearing.

70. GalTex seeks an order:

   a. Restraining Defendants from altering, modifying, destroying or transferring any GalTex-derived data held by Defendants, including electronically stored data;

   b. That OnWatch Enterprises be restrained from entering into any contracts with anyone based on any intellectual property obtained from Plaintiff;

   c. That Defendants be required to segregate and protect any and all source code, including any drafts, revisions, or copies;

    d. That any and all passwords and full access to information stored or contained on Amazon Web Services and on GalTex's cloud-based storage accounts (such as OneDrive) be turned over to Plaintiff;

    e. That any and all electronic information stored on GalTex's cloud-based storage accounts (such as OneDrive) such as source code, executables, or other electronic data related to Pilot OnWatch be turned over to Plaintiff;

    f. That Defendants be ordered to preserve any and all email messages, text messages, WhatsApp messages, and other documents evidencing communications related to GalTex or its data.

71. judgment granting other relief as follows:

    a. For Injunctive Relief prohibiting OnWatch Enterprises, Andrews, and Mercadante from using the intellectual property and work product of Plaintiff to enter into contracts with third parties;

    b. For all appropriate equitable relief;

    c. For pre-judgment interest as provided by law;

    d. For post-judgment interest as provided by law;

    e. Attorney's fees;

    f. Costs of suit;

    g. All other relief to which GalTex may show itself justly entitled.

                                                 **The Crew Law Firm, P.C.**
                                                 */s/ Paxton N. Crew*
                                                 **Paxton N. Crew**
                                                 ATTORNEY-IN-CHARGE FOR PLAINTIFFS

TBA No. 24058720
303 E. Main, Suite 260
League City, Texas 77573
Paxton@thecrewlawfirm.com
Telephone 713-955-0909
Facsimile 409-908-4050

## Certificate of Service

I, Paxton N. Crew do certify that I filed the foregoing document with the Electronic Case Filing System with the Southern District of Texas, Galveston Division on February 7, 2022. I do hereby further attest that I sent a true and correct copy of the foregoing application for temporary restraining order and request for preliminary injunction to the following:

James Andrews
12706 Elena
Galveston, Texas 77554
    **Via process server and e-mail: jandrews@onwatchus.com**

John Mercadante, III
4307 Cannondale Lane
Katy, Texas 77450
    **Via process server and e-mail: jmercadante@onwatchus.com**

OnWatch Enterprises, LLC
    **Via serving its registered agent for service of process:**
    **LegalCorp Solutions, LLC**
    **3 Greenway Plaza, Suite 130**
    **Houston, Texas 77046**

*/s/ Paxton N. Crew*
Paxton N Crew